

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

OCT 02 2009

Stephan Harris, Clerk
Cheyenne

Philip A. Nicholas
Nicholas, & Tangeman, LLC
170 N. Fifth Street
P.O. Box 928
Laramie, WY 82073
(307) 742-7140
(307) 742-7160 Fax

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

W.J. NICHOLAS and ALICE H. NICHOLAS,  )
)
       Plaintiffs,  )
)
v.  )
The UNITED STATES OF AMERICA, the  )
United States Forest Service, agency of the United  )  Case No. 09 C V 22 /B
States, RUTH ESPERANCE,RICK METZGER,  )
SEAN NICHOLAS, JAY SLAGOWSKI, REID  )
MARQUART, TRAVIS BRATTON, CORY  )
BOWSER, TRAVIS SORENSON, ERIC  )
OSKRESH, TODD F. BEASLEY, BURNS  )
DAVISON, VICTORIA KOHN, ADAM COOK,  )
MARK GIACOLETTO, REBECCA "BECKY"  )
AUS, MARK R. MULLINEX, CHRIS THOMAS,  )
John Doe's numbers 1, 2, 3, 4, 5 and 6, and Jane  )
Does numbers 1, 2, 3, 4, 5 and 6.  )
       Defendants.  )
)
)
)
)

## COMPLAINT FOR DAMAGES

### PARTIES

1.    Plaintiffs W.J. Nicholas and Alice H. Nicholas are husband and wife living at 417

So. Third, Laramie, Fremont County. Wyoming ("Nicholas").

2.    Plaintiffs bring this action against Defendant United States of America acting

through the Department of Agriculture and its agency the United States Forest Service (USFS).

3.    The USFS is an independent establishment of the executive branch of the United

*Complaint*
*Page 1 of 18 pages.*

States of America.

4.    The remaining Defendants are officers and employees of the USFS who are each sued in individual capacities as well as in their respective official capacities; the named officers and employees are:

a.    Ruth Esperance, USFS Agency Administrator, District Ranger of Shoshone National Forest Ft. Washakie Ranger District, Lander, Wyoming 82520;

b.    Rick Metzger, USFS Agency Administrator of Shoshone National Forest Ft. Washakie Ranger District, Dubois, Wyoming 82513;

c.    Sean Nicholas, South Zone FMO Shoshone National Forest Ft. Washakie Ranger District, Dubois, Wyoming 82513;

d.    Jay Slagowski, South Zone AFMO Shoshone National Forest Ft. Washakie Ranger District, Dubois, Wyoming 82513;

e.    Reid Marquart, South Zone Fire Fighter Shoshone National Forest Ft. Washakie Ranger District;

f.    Travis Bratton, Northern Zone Firefighter Shoshone National Forest;

g.    Cory Browser, Northern Zone Firefighter Shoshone National Forest;

h.    Travis Sorenson, Northern Zone Firefighter Shoshone National Forest;

i.    Eric Oskresh, Northern Zone Firefighter Shoshone National Forest;

j.    Todd F. Beasley, Northern Zone Firefighter Shoshone National Forest;

k.    Burns Davison, District Ranger, Shoshone National Forest;

l.    Victoria Kohn; Fire fighter Type 2;

m.    Adam Cook; Ignition specialist;

n.    Mark Giacoletto; Technical reviewer, Rx fire planner;

o. Rebecca "Becky" Aus, Forest Supervisor, Agency Administrator USFS, Cody, Wyoming:

p. Mark R. Mullinex, Incident Commander; and

q. Craig Thomas, Commander.

All of the above named persons are collectively referred to as the "Individual Named Defendants."

5.      Defendants John Doe 1, 2, 3, 4, 5, and 6 and Defendants Jane Doe 1, 2, 3, 4, 5 and 6, whose names are unknown, were other USFS officers and employees who either participated in the formulation and/or execution of the burn plan, and/or who relinquished control of the fire allowing it to destroy the Nicholas' property (collectively the "Doe Defendants").

6.      The Individual Named Defendants and the Doe Defendants were at all times employees of the USFS who acted in a manner that caused, in whole or in part, the failure to contain the prescribed fire.

7.      To the extent that the conduct of the Individual Named Defendants' and/or the Doe Defendants' deviated from federal statutes, policies and procedures, including, but not limited to the National Environmental Policy Act (NEPA), the Scoping Statement for Homestead Park Fuels Reduction Project, Project No. S0301, the Decision Memo Homestead Park II Fuels Reduction Project, and/or the Prescribed Burn Plan for Homestead Park II, they were not acting within the scope of their duties of employment with the USFS.

8.      In addition, and in the alternative, to the extent that the Individual Named Defendants' failed to act with ordinary care and attention to their duties, whether by omission or neglect, such failures were outside of their scope of employment with the USFS.

9.      Other than as plead throughout this Complaint, Defendants are in sole possession of the facts relating to the acts, omissions and conduct of each Individual Named Defendant and Doe Defendant.

### JURISDICTION and VENUE

10.     This action arises under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*. This Court is vested with jurisdiction pursuant to Section 1346(b) of Title 28 to the United States Code (FTCA).

11.     Venue lies in this district under 28 U.S.C. §§ 1391(b)(2) and (e)(1) and (2).

12.     Plaintiffs duly presented separate, written, timely and sufficient FTCA claims to Defendants as required by 28 U.S.C. §2401(b) on Standard Forms 95, along with additional information.

13.     Nicholas' FTCA Claim is dated March 31, 2008.

14.     Notices of final denial of both claims were issued by the USFS on April 8, 2009; both denial notices stating that the basis for denial was because the claims would not be cognizable as claims in tort under Wyoming law.

15.     All Plaintiffs have complied with all FTCA prerequisites and requirements.

16.     Based on Wyoming's statutory and case law, as well as applicable Federal law, a private individual who acted in the same manner, to the same extent and under like circumstances as did the Defendants in this case would be liable to the plaintiffs for the torts and damages claimed herein.

### OPERATIVE FACTS

17.      On April 9, 2006, Nicholas' owned forested mountain property described as 36.5 acres, more or less, located in the SW¼NW¼ and N½SW¼ of Section 7, Twp. 32 N., Rg. 100

W., 6th P.M., Fremont County, Wyoming ("Tract").

18.    Nicholas' Tract was located about 7 miles from Lander, Wyoming.

19.    On April 9, 2006, approximately one-fourth of Nicholas' Tract was thickly forested.

20.    On Sunday, April 9, 2006, Defendants ignited a fire on U.S. government forest land that adjoins Nicholas' Tract located in the Shoshone National Forest near Lander in Fremont County, Wyoming.

21.    The fire was intentionally ignited by Defendants pursuant to a written 'Prescribed Burn Plan' formulated by Defendants.

22.    A primary purpose for starting the fire was to reduce 'fuel load' on 153 acres of Federal land.

23.    A primary objective for starting the fire was to protect federal and adjacent private property from possible future 'wild' fire.

24.    The USFS assembled a crew of 35 or more people, with water trucks and other equipment to ignite and then control the burn.

25.    By Sunday afternoon, April 9th, 2006, the intended 153 acres were substantially burned.

26.    In the early evening of April 9, 2006, before the government started fire was extinguished, the entire USFS control crew abandoned management of the fire and returned to Lander to spend the night.

27.    By about 7:30 PM on April 9, 2006, the entire USFS crew had left the burn area.

28.    At the time the USFS crew left the site of their prescribed burn, there were still numerous live 'smokes' smoldering and burning along the length of the half-mile long upper

border of the burn area.

29.     The entire USFS control crew quit for the day, thereby abandoning 'control' of the burn to the elements and the vicissitudes of the fire itself.

30.     A skeleton crew of approximately 10 USFS personnel returned to resume management of the fire on April 10, 2006, at about 9:30 to 10:30 AM.

31.     Upon arriving the USFS crew discovered wind-fanned wild-fire near and along the upper border of the burn area.

32.     The skeleton crew was unable to control the government started fire on government land, which quickly spread outside the prescribed burn area.

33.     Within half an hour or so after the skeleton crew returned, the fire spread onto the Nicholas' Tract and destroyed the Nicholas' property.

34.     All improvements, trees and other vegetation on the Nicholas' Tract were destroyed by the government started fire.

## CLAIMS FOR RELIEF

35.     Defendants owed Plaintiffs a duty of ordinary care to avoid negligent injury to others.

36.     Defendants owed to Plaintiffs a duty to carefully devise a comprehensive plan for the burn, a plan that would comply with requirements of USFS regulations and that would honor the safety commitments made to interested parties and to the public during the National Environmental Policy Act oversight review.

37.     Defendants owed to Plaintiffs a duty to carefully devise a comprehensive plan for the burn, and to carefully implement the plan.

38.     During the initial scoping process for the burn, Homestead Park property owners

warned the USFS that early morning down-draft winds and sudden gusts from the upper mountains were common.

39.    During the burn plan formulation Homestead Park property owners alerted the USFS employees to a 2003 'prescribed-control burn' conducted by the Bureau of Land Management less than a mile away, on an adjacent ridge, which the BLM personnel left the burn over-night and which blew into a major wild-fire the following morning that burned many acres of privately owned forest as well as considerably more Federal land and forest.

40.    USFS personnel assured the Homestead Park property owners that they would not leave any fire started by them overnight nor until fully extinguished, and that they would equip their crews with adequate resources to control the fire started by them.

41.    USFS and its supervisors were aware of and had been forewarned by Homestead Park property owners of the likelihood the burn would grow out of control if left unattended and of the propensity and likelihood of fire in this forest to creep and grow creating its own drafts and air currents.

42.    Defendants owed to Plaintiffs a duty to adopt a plan that would comply with safety commitments made to interested parties and made to NEPA and the public during the NEPA process.

43.    During the NEPA review process, NEPA required and USFS promised that hand fire lines would be constructed along the Forest/Residence boundary and where needed on the burn boundary. [A hand line is a fire line built with hand tools. A fire line is a barrier that is scraped or dug to mineral soil – to earth devoid of vegetation or other combustible fuel.]

44.    USFS sought permission from Homestead Park property owners to allow the USFS to use Homestead Park roads and property in order to provide access to the USFS burn

site, and to control the fire the USFS intended to start.

45.    USFS sought permission from Homestead Park property owners to use the ponds in Sheep Canyon Creek as a water source.

46.    Homestead Park property owners granted their consent to allow the USFS to use their property and resources on the conditions that under no circumstances would the USFS and its personnel leave the burn unattended until all the burning is entirely extinguished, and that the USFS would do whatever necessary to confine the burn to forest service property.

47.    USFS accepted those conditions and represented they would abide them. Thereafter USFS used the private property and resources it had requested for its activities.

48.    Although necessary, warranted and promised to the homeowners, including Nicholass, through neglect on the part of the Defendants the requirement for 24-hour coverage was not carried through to the burn plan, and was not adhered to by Defendants.

49.    Defendants' duties, and the amount of care required of them were in proportion to the risks associated with starting large fires.

50.    Every person who lights a fire has a duty to stay with it and to control it until it burns out or is extinguished, in order to prevent the fire from harming others.

51.    In 1965 in somewhat similar circumstances, the Wyoming Supreme Court held (inter alia),

> . . . . . the town [of Douglas] was negligent by burning and permitting the burning of refuse on its dump at an elevation exposed to the full force of high winds without taking adequate precautions to control and contain the burning area and to prevent the fire spreading out of control over the surrounding territory.

> Town of Douglas v. Nielsen, 409 P.2d 240, 241-242 (Wyo. 1965)

52.     The Criminal Code of Wyoming has provided for the following standard of care since at least 1982:

> A person is guilty of a misdemeanor . . . if he lights a fire in any woods or on any prairie and leaves the vicinity of the fire without extinguishing it or containing it so it does not spread and is not likely to spread.

> Wyoming Statutes Annotated § 6-3-106.

53.     Wyoming case law establishes that violation of such a statute, *at a minimum* constitutes evidence of negligence to be considered together with all the other facts and circumstances in evidence.

54.     At a minimum, violation of the preceding Wyoming Statutes is *prima facie* evidence of negligence, and, in addition, may constitute negligence *per se*.  *See*, *Bagley v. Watson*, 478 P.2d 595, 597 (Wyo. 1971).

55.     In the *Scoping Statement for Homestead Park Fuels Reduction Project*, Project No. S0301 the USFS stated, *inter alia*, "Burning will not take place unless specific weather, moisture and vegetative conditions are met prior to ignition. Adjacent property owners have made specific requests for 24-hour coverage during burning operations and cutting the burned conifers at completion.  This activity would allow for: 1) The reduction in fuel loads with the grass/forb/sage communities, 2) enhance grass/forb growth, 3) enhanced defensible space along the forest/urban interface, 4) provide structure safety during burning, 5) and provide for visual enhancement."

56.     Defendants were unaware that the national weather service was predicting high winds at the time and in the area of the prescribed burn.

57.     No method or procedure was adopted regarding the prediction of weather changes during the burn and or during mop-up phases.

58.     On Sunday evening the burn boss instructed one employee to obtain updated weather forecast for the following day and to report the information to the crew chief and burn-boss.  Negligently, that employee did not obey the instruction.  Negligently, neither the crew chief nor the burn-boss followed up.

59.     There was negligent failure to obtain and to rely upon current weather service information, in order to anticipate and react to predicted wind and weather conditions.

60.     The *Decision Memo Homestead Park II Fuels Reduction Project* prepared by the USDA Forest Service, Shoshone National Forest, South Zone/Washakie Ranger District, Fremont County Wyoming, dated January 31, 2005, was published to fulfill the NEPA requirements.

61.     The *Decision Memo Homestead Park II Fuels Reduction Project* required that "hand lines will be constructed along the Forest/Residence boundary and where needed on the burn boundary."

62.     A hand fire line cut to mineral soil that was deemed requisite by the NEPA Findings, and cold trailing required by the 'Burn Plan', would have insured that the black line created by Defendants was cold; and would have eliminated fuel for the fire that enabled it to burn across the forest boundary onto Nicholas' Tract.

63.    'Cold Trailing' is the careful inspection and feeling the ground with the hand for heat to detect any fire; then digging out every live spot, and trenching any live edge.

64.    Defendants failed to include the NEPA requirement for cold trailing in the burn plan, and failed to follow that requirement in implementing the prescribed burn.

65.    When Defendants abandoned the fire site on April 9, 2006, the black line created by Defendants was not devoid of fuel and was not cold.

66.    Vegetative fuel in the black line was later ignited from which fire traveled onto private ground, including Nicholas' Tract that was supposed to be protected by the black line and an adequate hand line.

67.    USFS installed a water pump in a pond in the creek and laid a 1½ inch canvas hose through the sage brush on private land up the area of Nicholas' property. The black line failed even to protect the hose lay which was the sole protection provided for the Nicholas' Tract.

68.    The single canvas hose was itself burned through, rendering it useless, due to the failure of Defendants to follow and adhere to the NEPA requirements and the Burn Plan cold trail requirements.

69.    The *Prescribed Fire Burn Plan for Homestead Park II* executed by District Ranger Ruth Esperance on March 31, 2006, required, *inter alia*, that two type 6 engines, as defined in 7.0 contingency plan, be staged near the residences to the east of the unit boundary, a minimum of two firefighters be assigned to each of the engines on the burn, including the two

engines that are assigned to the homes, and a minimum 1-3 people be assigned to the mop-up and patrol.

70. Defendants failed to position two type 6 engines anywhere near any of the residences; and failed to assign or position any firefighters anywhere near the Homestead Park residences and properties.

71. Defendants made no attempt to position the engines or firefighters as required by the burn plan.

72. The Prescription Burn should not have begun until the Defendants were able to position the engines and the fire fighter crews as required by the plan.

73. There was no patrol, no USFS personnel, and no charged water hose or other protection anywhere near the Nicholas' Tract until after the fire was entirely out of control on federal land, after it had moved across the black line and hose lay, and after it had burned several hundred feet through grass and brush on private land toward the Nicholas' Tract.

74. The required number of persons was not assigned to patrol the area during mop-up operations.

75. When the fire went out of control, the Defendants attending the burn were engaged in protection of the federal land in preference to the adjacent private property, including the Nicholas' Tract.

76. The Forest Service Manual 5100-Fire Management, Chapter 5140, which became final on March 24, 2006 (more than a week before the burn plan was signed and several weeks

before the fire was started) required, inter alia, (1) that the RxBP's [Prescribed Burn Plans] must specify the conditions under which prescribed fires may be left unstaffed prior to being declared out, (2) these conditions apply to burns which are left unstaffed at night, (3) methods must be adopted for the burn boss to predict the fire weather and fire behavior which the RxBP has determined to be acceptable for unstaffed periods, and (4) the Prescribed Burn Plans are to be reviewed to ensure that the elements are accurate.

77.     The Burn Plan did not fulfill the requirements of FSM 5142.6 requiring burn plans to specify the conditions under which a fire may be left unstaffed prior to being declared out.

78.     No provision was made to either staff or patrol the fire or the fire's perimeter from Sunday evening of April 9, 2006, until after mid-morning on Monday, April 10, 2006, after the fire was already out of control.

79.     The Wildland and Prescribed Fire Management Policy, effective August 1998, which was adopted by reference by the Forest Service Manual 5100-Fire Management, Chapter 5140, provides that an approved burn plan, inter alia, shall provide for mop-up procedures.

80.     An approved mop-up plan was not included in the burn plan.

81.     Negligent conduct of the Defendants occurred throughout the Prescribed Burn Process, from formulation of the 'plan' through suppression of the government-started fire.

82.     Defendants committed multiple, separate and continuing negligent acts and omissions that caused Plaintiffs' damages.

83.     Defendants were negligent in their formulation of the Prescribed Burn Plan.

84.     Defendants negligently relied upon people to plan and implement this fire who did not fully recognize or understand the complexity and risk associated with this particular prescribed burn.

85.     Defendants negligently implemented a deficient Burn Plan, including without limitation, failing to include proper safety requirements in the plan, failing to specify if and under what circumstance the burn may be left unstaffed, and failing to correct the absence of an adequate mop-up plan as required by USFS regulation.

86.     Defendants were negligent in their efforts to protect the adjacent private land and structures including Nicholas' Tract.

87.     Defendants negligently failed to comply with and follow USFS regulations long in force and others previously published that were also effective before the burn (including FSM 5100-5140, FSM 5142.6).

88.     Defendants negligently failed to implement decisions of the NEPA process and commitments to private land owners (made when seeking permission to use private roads, water and premises for staging the burn) relating to 24 hour attendance and confining burn to USFS land.

89.     Defendants negligently failed to implement the burn plan provisions, including without limitation, the requirement to station engines and staff near the private residences, to

construct protective handlines, for "cold trailing" the burning along the USFS-private property boundary, and failure to anticipate and monitor wind and weather conditions and predictions.

90.    Defendants negligently failed to provide adequate staff, availability of water, and reasonable fire fighting tools and equipment anywhere near the private residences to suppress fire for protection of the private properties.

91.    Defendants negligently relied upon an inexperienced and inadequate fire control crew, with a lack of adequate supervision and informed direction by on-the ground supervisors.

92.    Defendants were negligent in having the control/mop-up crew return too late in the morning of April 10, 2006.

93.    Defendants' internal negligence by which implementation mitigation was not carried through began from the decision making integrated into the burn plan, and continued through the implementation of the plan during the burn and mop-up operations.

94.    Defendants were negligent in leaving hot smoldering, smoking, burning ashes and embers to the elements in circumstances that without control the embers might ignite, and which would probably spread into open wild fires.

95.    The course of action that the Defendants were required to follow prior to, during and after their ignition of the fire, was dictated by federal statutes, policies and procedures, including, but not limited to the National Environmental Policy Act (NEPA), the Scoping Statement for Homestead Park Fuels Reduction Project, Project No. S0301, the Decision memo Homestead Park II Fuels Reduction Project and the Prescribed Burn Plan for Homestead Park II.

96.     Defendants were required by law to adhere to such statutes, policies and procedures including, but not limited to the National Environmental Policy Act (NEPA), the Scoping Statement for Homestead Park Fuels Reduction Project, Project No. S0301, the Decision memo Homestead Park II Fuels Reduction Project, Forest Service Manual 5100-Fire Management, Chapter 5140, and the Prescribed Burn Plan for Homestead Park II.

97.     Defendants were not permitted any discretion in carrying out the directives of such statutes, policies and procedures, but were required to strictly adhere to and follow such statutes, policies and procedures including, but not limited to the National Environmental Policy Act (NEPA), the Scoping Statement for Homestead Park Fuels Reduction Project, Project No. S0301, the Decision memo Homestead Park II Fuels Reduction Project and the Prescribed Burn Plan for Homestead Park II.

98.     The acts and omissions of USFS and its government employees complained of in this complaint were not the conduct of employees exercising due care in the execution of statutes or regulations.

99.     The conduct, acts and omissions of USFS and its government employees complained of in this complaint were not committed in the exercise or performance, or the failure to exercise or to perform, any discretionary functions or any discretionary duties on the part of USFS or any of its employees.

100.    None of the tortious misconduct of the USFS and its employees complained of herein involves any policy-based decision making process that encompasses or involves

weighing social, economic, and/or political factors; none involve social wisdom, political practicability, or economic expediency.

101.    Despite USFS promises of full transparency and for complete disclosure, and despite Nicholas' Freedom of Information Act inquiry, the USFS continues to deny and conceal relevant information that is admissible and other information that is reasonably likely to lead to discovery of other admissible evidence.

102.    Plaintiffs need and are entitled to discovery of Defendants in order to fully describe Defendants' negligence. Upon receipt of such information, Plaintiffs reserve the right to amend this Complaint to fully set forth and allege such other and further conduct of the defendants disclosed by such additional information.

103.    Defendants' negligence caused Plaintiffs Nicholas to suffer actual and continuing damages that are described and set forth in the statutory claim presented to USFS (information in which is referred to, alleged as if set forth here and incorporated by this reference) in the sum of Four Hundred and Ninety-Nine Thousand, Nine Hundred and Sixty Five Dollars ($499,965.00).

WHEREFORE, Plaintiffs Nicholass demand judgment against the Defendants, jointly and severally, in the sum of Four Hundred and Ninety-Nine Thousand, Nine Hundred and Sixty Five Dollars ($499,965.00) and continuing damages as may be allowed in law, together interest as allowable by law, together with costs in this action, including attorneys fees, and such other relief as is just and proper.

Dated October 2, 2009

W.J. NICHOLAS and ALICE NICHOLAS

Philip A. Nicholas     WSB No. 5-1785
Nicholas & Tangeman, LLC
170 No. Fifth Street
P.O. Box 928
Laramie, WY  82073-0928
(307) 742 – 7140
(307) 742 – 7160 Fax
ATTORNEYS FOR PLAINTIFFS

*Complaint*
*Page 18 of 18 pages.*